**Francisco DAS CHAGAS**

v.

**SEDCO, INC. and Sedco Perfuracoes Maritimas, Ltda.**

**Civ. A. No. 81–3234.**

United States District Court, E.D. Pennsylvania.

Feb. 18, 1983.

William Fred Hagans, Houston, Tex., for plaintiff.

Timothy J. Abeel, Krusen Evans & Byrne, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this case, a Brazilian plaintiff, injured on an oil-drilling rig stationed off the Brazilian coast, has sued a United States corporation and the Brazilian subsidiary by whom he was employed, alleging that the injuries give rise to a claim arising under "the Maritime Law of the United States as modified by the Jones Act. . . ." Contending, pursuant to *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), and subsequent cases in this and other Circuits, that plaintiff has failed to state a claim on which relief can be granted, defendants have moved for summary judgment. The United States corporation urges the additional ground that, not being plaintiff's employer, it is not a proper defendant in a Jones Act case.

On the record as it now stands, the following matters are uncontroverted: Plaintiff Francisco Das Chagas, who is domiciled in, and a citizen of, Brazil, became an employee of defendant, Sedco Perfuracoes Maritimas, LTDA [Sedco Perfuracoes], a Brazilian corporation, in June of 1979. Sedco Perfuracoes is a wholly-owned subsidiary of defendant Sedco, Inc. [Sedco], a United States corporation chiefly based in Texas. On February 6, 1980, Das Chagas was injured while working aboard an oil-drilling rig, the 135–F, a "vessel" under United States registry owned by Sedco. The 135–F was at the time of the accident chartered by Sedco to Petroleo Brasileiro, S.A., which would seem to be a Brazilian corporation, and had then been stationed off the Brazilian coast for more than three years. Following the accident, Das Chagas was hospitalized and was paid benefits under the aegis of Brazil's National Institute for Social Security.

Succinctly stated, the issue before the court is whether this court should retain the case and try it under the Jones Act or whether plaintiff should be remitted to appropriate proceedings in his own country. The proper mode of approaching this question was recently described by our Court of Appeals, after an appraisal of the cases from *Lauritzen* forward, in the following terms: "Taken together these cases hold that a court reviewing a claim to Jones Act coverage should determine the substantiality of the links to the United States and the

links to the foreign sovereignty. This process is undertaken in order to discern in whose 'domain' the paramount interest lies. *Lauritzen,* 345 U.S. at 582, 73 S.Ct. 921. Under certain circumstances the Jones Act may be far-reaching. However, when the links to the United States are weak and the interests of another sovereign are substantial, the Jones Act is not applicable." *Chirinos de Alvarez v. Creole Petroleum Corp.,* 613 F.2d 1240, 1246 (3 Cir.1980).

■ As an initial matter, defendant Sedco argues that it should be cast out of the equation entirely since it was not plaintiff's employer and therefore is not subject to liability under the Jones Act. On a narrowly conceptual level the contention has merit. But the record before the court shows that Sedco not only owned Sedco Perfuracoes, plaintiff's formal employer, but owned the 135–F on which plaintiff was working at the time of the accident. Under these circumstances, a more pragmatic view of the case—at least for the purpose of disposition of the present motion for summary judgment—is to assume that Sedco and its wholly-owned subsidiary constitute a single entity which employed plaintiff and owned the 135–F.

■ When the record is viewed in this way, the relevant facts bear a striking similarity to those considered by the Ninth Circuit in *Phillips v. Amoco Trinidad Oil Co.,* 632 F.2d 82 (9 Cir.1980). And that court's thoughtful analysis, *id.* at 86–88, is dispositive here.

Factors unambiguously pointing toward the application of American law, and hence the Jones Act, include the law of the flag, the allegiance of the defendant shipowner, and the law of the forum. If this were a typical maritime case involving a vessel sailing in international commerce, it would appear that American law would apply.[4]

We have determined, however, that the law of the flag should not be accorded controlling weight because of the facts of this case.

In *Lauritzen,* the Court stated that the law of the flag had traditionally been accorded great weight "on the pragmatic basis that there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her." 345 U.S. at 585, 73 S.Ct. at 930. This rationale does not apply to a drilling vessel whose operations are at a fixed location. Here the locus is unchanging, and the logic of local experience can profitably be applied to the claims of these Trinidad nationals. That these workers were injured immediately offshore of Trinidad is no fortuity, unlike the place of injury on a commercial sailing vessel. . . .

.     .     .     .     .

For similar reasons, we place greater weight on the allegiance and domicile of these workers and on the place of contract than on the allegiance of the defendant shipowner. *Lauritzen* stated that "each nation has a legitimate interest that its permanent inhabitants be not maimed or disabled from self-support." 345 U.S. at 586 [73 S.Ct. at 930].

.     .     .     .     .

The place of contract also assumes added significance in this case, because of the fixed location of the employment and the workers' consequent reasonable expectations as to the governing law. [Footnote omitted] Whereas the place of contract of the typical seaman is fortuitous, since "a ship takes on crew in any port where it needs them," *Lauritzen v. Larsen, supra,* 345 U.S. at 588, 73 S.Ct. at 931, the allegiance and place of contract of these workers was uniform, predictable, and unchanging.

Our analysis and application of the base-of-operations test suggested by *Rhoditis* confirms our conclusion that this transaction is within the domain of Trinidad's laws. Plaintiffs observe that in *Rhoditis* the Court focused on the *"shipowner's"* base of operations, 398 U.S. at 309, 90 S.Ct. at 1734, and argue that the relevant base of operations of Santa Fe is the United States. It is true that Santa

Fe is based in Orange, California, and that its Orange offices were involved in monitoring and controlling the overall operations of Mariner I. We conclude, however, that the more relevant and important base of operations for determining choice-of-law in this case is in Trinidad. We thus follow cases that have focused on the base of operations of the relevant business venture rather than of the corporate owner of the vessel. This is consistent with the injunction that we weigh the "connecting factors between the *shipping transaction regulated* and the national interests served by the assertion of authority." *Lauritzen v. Larsen, supra,* 345 U.S. at 582, 73 S.Ct. at 928 (emphasis added). *See DeMateos v. Texaco, Inc., supra* [3 Cir.1977], 562 F.2d at [895] 902. . . .

---

[4] In *Lauritzen v. Larsen,* 345 U.S. 571, 585, 73 S.Ct. 921, 930, 97 L.Ed. 1254 (1953), the Court stated that "the weight given to the ensign overbears most other connecting events in determining applicable law." Although the law of the flag was not given controlling weight in *Rhoditis,* where the Court applied American law to a foreign-flag ship, commentators have generally assumed that American maritime tort law will follow the flag. *See e.g.* G. Gilmore & C. Black, The Law of Admiralty 477 (2d ed. 1975); 2 M. Norris, The Law of Seamen § 684 (3d ed. 1970).

To the foregoing analysis of the Ninth Circuit, it remains only to add that in this case defendants Sedco and Sedco Perfuracoes have undertaken to stipulate that if this matter is dismissed, they will be "amenable to, and will accept, service of process in Brazil" and that they will "agree to waive any Statute of Limitations defense under the law of Brazil arising after this action was filed in the United States District Court for the Eastern District of Pennsylvania on August 10, 1981."

Wherefore, in an Order to be filed today, the motion for summary judgment will be granted.[1]

---

1. This grant of defendants' motion for summary judgment obviates consideration of defendants' additional contention that the complaint should be dismissed because of plaintiff's fail-

ure to prosecute the case with due diligence. Cf. the Memorandum and Order of Fullam, J. in *Dos Santos v. Sedco, Inc., et al.,* C.A. No. 81–1442 (January 17, 1983).