Harilaos KUKIAS, Plaintiff, Appellant,

v.

CHANDRIS LINES, INC., et al., Defendants, Appellees.

No. 87–1043.

United States Court of Appeals, First Circuit.

Heard June 1, 1987.

Decided Feb. 16, 1988.

Harry A. Ezratty, San Juan, P.R., with whom Philip E. Roberts, Hato Rey, P.R., was on brief, for plaintiff, appellant.

keys to the flat. For Aguirre's benefit, we assume *arguendo* that he did not.

J. Ramon Rivera–Morales, with whom Jimenez, Graffam & Lausell, San Juan, P.R., was on brief, for defendants, appellees.

Before BREYER and SELYA, Circuit Judges, and RE,* Chief Judge.

RE, Chief Judge:

Plaintiff-appellant, Harilaos Kukias (Kukias) appeals from a judgment of the United States District Court for the District of Puerto Rico, which dismissed his claim for failure to state a cause of action under the Jones Act, and under the general maritime law of the United States. Kukias, a Greek seaman, sought to recover damages for personal injuries sustained while employed aboard the cruise ship "M/V The Victoria" (Victoria). Kukias contends that the district court erred in adopting the Magistrate's Report and Recommendation. Specifically, he contends that the Magistrate, after consideration of the various choice-of-law factors, erroneously concluded that Kukias had no remedy under the laws of the United States.

The question presented on this appeal is whether Kukias has stated a cause of action for his claim under the Jones Act or the general maritime law of the United States. After a *de novo* review, we hold that the relevant contacts are insufficient to warrant the application of the Jones Act or general maritime law. Accordingly, we affirm the judgment of the district court.

### Background

Kukias, a resident and citizen of Greece, was employed aboard the Victoria, a vessel of Panamanian registry, owned by defendant-appellee Phaedon Navegacion, S.A. (Phaedon), a Panamanian corporation, and managed and operated by defendant-appellee Chandris, S.A. (Chandris), a Liberian corporation. The known shareholders of both corporations are Greek domiciliaries and neither corporation maintains any offices or facilities in the United States. An independent entity, Chandris, Inc., incorporated in Delaware, serves as general passenger agent for Chandris, S.A. in the United States. Kukias does not contest the district court's dismissal as to Chandris, Inc.

On April 16, 1984, the Victoria, during its Caribbean cruising season, was on a voyage from San Juan, Puerto Rico to St. Thomas, Virgin Islands. On that date, Kukias was injured when he fell down a stairway. He received treatment aboard the vessel, and was later hospitalized in St. Thomas. Kukias received further medical treatment upon his return to Greece where he apparently continues to reside.

Kukias commenced this action in United States District Court for the District of Puerto Rico, to recover damages for his injuries which he alleged were due to the negligence of the defendants, and their failure to maintain a seaworthy vessel. Jurisdiction was predicated on the Jones Act, 46 U.S.C. § 688 (1982), and general maritime law. Upon defendants' motion to dismiss, Magistrate Arenas, after an analysis of the factors outlined in *Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 928–32, 97 L.Ed. 1254 (1953), and applied and augmented in *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 381–84, 79 S.Ct. 468, 485–86, 3 L.Ed.2d 368 (1959) and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 1733–34, 26 L.Ed.2d 252 (1970), determined that United States law was inapplicable. The Magistrate recommended dismissal of the action on the conditions that the defendants submit themselves to the jurisdiction of the Greek courts, and waive defenses of venue and statute of limitations. The defendants agreed to abide by the conditions stated by the Magistrate. Subsequently, Judge Acosta of the district court, entered judgment which adopted the Magistrate's Report and Recommendation, and dismissed the action.

### Discussion

At the outset, it is noted that the choice-of-law issue is a question of law, and, therefore, is subject to *de novo* review by this court. *See Sigalas v. Lido Maritime*,

---

* Chief Judge of the United States Court of International Trade, sitting by designation.

*Inc.,* 776 F.2d 1512, 1516 (11th Cir.1985); *Pereira v. Utah Transp., Inc.,* 764 F.2d 686, 689 (9th Cir.1985), *cert. dismissed,* 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986).

As is acknowledged by all of the parties, the court's choice-of-law analysis, as to both the Jones Act and general maritime law, should properly be guided by the following factors set forth in both the *Lauritzen* and *Rhoditis* cases:

> (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum.

*Rhoditis,* 398 U.S. at 308, 90 S.Ct. at 1733; *Lauritzen,* 345 U.S. at 583–91, 73 S.Ct. at 928–32. In addition, the Court in *Rhoditis* noted that these seven factors were "not intended as exhaustive," and added an eighth factor, the shipowner's base of operations. *Rhoditis,* 398 U.S. at 309, 90 S.Ct. at 1734.

As indicated by Magistrate Arenas, Kukias sustained his injury on the Victoria, somewhere off the coast of Puerto Rico en route to St. Thomas, although the precise location of the vessel, at the time of the incident, is unknown. Even if it is assumed that the accident occurred in United States waters, this first factor is of little significance. As stated by the Supreme Court in the *Romero* case, "[t]he amount and type of recovery which a foreign seaman may receive from his foreign employer while sailing on a foreign ship should not depend on the wholly fortuitous circumstance of the place of injury." *Romero,* 358 U.S. at 384, 79 S.Ct. at 486; *see also Lauritzen,* 345 U.S. at 583, 73 S.Ct. at 928 (test of location of the wrongful act is of limited application to shipboard torts).

The second factor, the law of the flag, has been said to be of "cardinal importance" in determining the choice of law in maritime cases. *See Lauritzen,* 345 U.S. at 584, 73 S.Ct. at 929. At the time of

Kukias' accident, the Victoria was registered under the flag of Panama.

Another significant factor is the allegiance or domicile of the injured seaman. There is no doubt that Kukias is a domiciliary and citizen of Greece.

The fourth factor, the allegiance of the shipowner, is often misleading. It is elementary that "only an employer can be liable under the Jones Act." *Karvelis v. Constellation Lines S.A.,* 806 F.2d 49, 52 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987). In this case, the employer of Kukias was not the owner of the ship, Phaedon, but was Chandris, the company hired to manage and operate the Victoria. Kukias, however, may also be considered the employee of the shipowner, Phaedon, under the borrowed servant doctrine. *See Spinks v. Chevron Oil Co.,* 507 F.2d 216, 224–25 (5th Cir.1975). Hence, the court must consider the allegiance of Chandris, Kukias' employer, as well as the allegiance of the shipowner, Phaedon. In determining the allegiances of these corporations, the court must "look through the facade of foreign registration and incorporation to find the true ownership of the vessel" and its operator. *See Villar v. Crowley Maritime Corp.,* 782 F.2d 1478, 1481 (9th Cir.1986).

In this case, it is clear that Phaedon was a Panamanian corporation, and that Chandris was incorporated in Liberia. Looking through the "facade of incorporation," however, the court agrees with the Magistrate's finding that the allegiance of both corporations is with Greece. Even if this were not true, it is beyond dispute that neither corporation is "a foreign shell created by American interests to avoid the requirements of American law." *See Cruz v. Maritime Co. of Philippines,* 549 F.Supp. 285, 288 (S.D.N.Y. 1982), *aff'd,* 702 F.2d 47 (2d Cir.1983).

Although the fifth factor, the place of contract, is given little weight in maritime law choice-of-law determinations, courts have stated that the "[c]hoice of law expressed in the contract may be much more important." *Villar v. Crowley Maritime Corp.,* 782 F.2d at 1481; *see Lauritzen,*

345 U.S. at 588–89, 73 S.Ct. at 931; *Pereira v. Utah Transp., Inc.,* 764 F.2d at 689. Kukias signed on at Piraeus, Greece, under a contract of employment which specified that "any claim or dispute that may arise from the present agreement or the Ship's Articles will be exclusively subject only to Greek Law and to the Greek Collective Agreement ... and only the Greek Courts will have exclusive jurisdiction...."

The sixth factor, the availability of a foreign forum, to wit, Greece, is assured by the agreement of the defendants to the conditions adopted in the district court's order of dismissal. Hence, there is no doubt that a foreign forum is available.

As for the seventh factor, the law of the forum, even Kukias concedes that the law of the forum "counts for little when the defendants are 'involuntarily made a party.'" *See Sosa v. M/V Lago Izabal,* 736 F.2d 1028, 1031 (5th Cir.1984); *accord Sigalas,* 776 F.2d at 1518.

The final factor to be considered is the base of operations. From its analysis, the court has concluded that neither the shipowner, Phaedon, nor the manager and operator of the cruiseship, Chandris, has its base of operations in the United States.

From the list of pertinent factors, the only two factors that would support the applicability of United States law are the place of the wrongful act, and the law of the forum. Although the Magistrate concluded that these two factors were insufficient to support a cause of action under the Jones Act or general maritime law, Kukias nevertheless contends that the Magistrate erred in his choice-of-law analysis. Specifically, Kukias asserts that the location of his medical treatment, an American hospital in St. Thomas, should have been a factor in the choice-of-law analysis. Kukias also contends that the most significant factor in the choice-of-law analysis should be the "substantial contacts/base of operations" test enunciated in *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). Kukias submits that "the facts overwhelmingly evidence a 'substantial contact' with the United States by Chandris and the Victoria."

The court, however, has concluded that none of these contentions are persuasive, and holds that there are insufficient factors to support a cause of action under the Jones Act or the general maritime law of the United States.

It must be noted that, in expanding upon the *Lauritzen* factors, the Court in *Rhoditis* made it clear that "the list of seven factors in *Lauritzen* was not intended as exhaustive." *Rhoditis,* 398 U.S. at 309, 90 S.Ct. at 1734. Kukias, however, has not called to the court's attention any case in which the place of hospitalization was accorded significant weight in deciding the applicability of the Jones Act or general maritime law in a maritime tort action.

Indeed, the courts that have considered the question have decided to the contrary. *See, e.g., Mattes v. National Hellenic Am. Line, S.A.,* 427 F.Supp. 619, 622 (S.D.N.Y. 1977); *Brillis v. Chandris (U.S.A.) Inc.,* 215 F.Supp. 520, 523 (S.D.N.Y.1963). In the *Mattes* case, although the Jones Act was held to be applicable because of the shipowner's strong presence in the United States, the court stated that "[t]he fact that plaintiff received initial medical treatment in the United States is simply not sufficiently 'substantial' to justify application of American law." *Mattes,* 427 F.Supp. at 622. Cases from this circuit, although pre-*Rhoditis,* have similarly failed to consider the place of hospitalization as a factor in determining the applicability of the Jones Act or general maritime law in a maritime tort action. *See, e.g., Volkenburg, P.P.A. v. Nederland–Amerik. Stoomv. Maats,* 336 F.2d 480 (1st Cir.1964); *Zouras v. Menelaus Shipping Co.,* 336 F.2d 209 (1st Cir.1964). Moreover, even in the absence of persuasive authority, it would seem unwise to allow the choice of law to be influenced by a factor, the place of hospitalization, which is only slightly less fortuitous than that of the place of the wrongful act.

In considering the applicability of the *Lauritzen–Rhoditis* factors, the court must disagree with plaintiff's suggestion that the decision in *Rhoditis* requires that the base of operations must be emphasized

over all of the other factors. As correctly noted by defendants, in *Rhoditis* the Supreme Court stated that "the shipowner's *base of operations* is another factor of importance in determining whether the Jones Act is applicable; and there well may be others." *Rhoditis*, 398 U.S. at 309, 90 S.Ct. at 1734 (emphasis in original); *see DeMateos v. Texaco, Inc.*, 562 F.2d 895, 901 (3d Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978). Surely, this language does not mean that the shipowner's base of operations is the dispositive factor. The post-*Rhoditis* decisions continue to consider the full range of factors relevant to a choice-of-law determination, and, in appropriate cases, have declined to apply the Jones Act despite a finding that the shipowner had substantial domestic contacts. *See, e.g., Pereira v. Utah Transp., Inc.*, 764 F.2d at 689–90; *see also Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1482 (9th Cir.1986) ("even assuming that [defendant's] base of operations is in the United States, under these facts that alone is not a sufficient basis to apply the Jones Act.").

Although it is not dispositive, the base of operations is a significant factor. To determine whether a vessel or its operator has a base of operations in the United States, the court must examine "the substantial and continuing contacts that th[e] alien owner has with this country." *Rhoditis*, 398 U.S. at 310, 90 S.Ct. at 1734.

Kukias contends that "[t]he facts overwhelmingly evidence 'substantial contact' with the United States by Chandris and the Victoria." Kukias stresses that, for a major portion of the year, the Victoria embarks on weekly cruises from Puerto Rico; that substantial revenue from American sources is generated from the operation of the Victoria and is collected by a domestic corporation, Chandris, Inc.; that the vessel is supplied with food and provisions in an American port; and that large sums are spent in advertising the Victoria in the United States. On the basis of these facts, Kukias would have the court decide that the base of operations for Chandris and the Victoria is in the United States, and, therefore he has stated a cause of action under the Jones Act. The court, however, does not agree.

As noted previously, the defendants in this case are foreign corporations controlled by Greek domiciliaries. Defendants maintain no offices in the United States, and management decisions are not made in this country. Furthermore, for portions of the year, the Victoria cruises exclusively in European ports. While the vessel generates revenue from United States sources, and regularly travels to American ports, the management and ownership of the Victoria rest exclusively in the hands of Greeks who do not conduct their activities within the United States.

In resolving the question of the defendants' bases of operations, helpful guidance is found in the case of *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512 (11th Cir. 1985). In *Sigalas*, a Greek national died in Senegal while en route from Greece to the United States. The vessel was owned and operated by foreign corporations which had no United States offices but which had a contractual relationship with a ticket agent located in the United States. The vessel cruised the Caribbean, as well as the North Atlantic and Mediterranean. In all seasons over 90% of ticket sales were to American nationals. *Sigalas*, 776 F.2d at 1514.

In affirming the district court's decision that the Jones Act and general maritime law did not apply, the court of appeals in *Sigalas* emphasized that "over 80% of the stock in the relevant corporations is held by Greeks, who exercise complete control over the day-to-day management of the [vessel]." *Id.* at 1518. As for the relevance of ticket sales to Americans, the court stated: "that the bulk of [defendant's] revenue comes from American pocketbooks.... is not enough to justify application of American law." *Id.; see also Rodriguez v. Flota Mercante Grancolombiana, S.A.*, 703 F.2d 1069, 1073 (9th Cir.) ("The fact that [defendant's] vessels have grossed an impressive amount of income in calling on ports of the United States does not prove that [defendant's] base of operations is in the United States."), *cert. denied*, 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 94 (1983). A different

result clearly is not warranted in this case simply because, at the time of his injury, Kukias was on board a vessel which may have been traveling in United States waters. *See Romero*, 358 U.S. at 383, 79 S.Ct. at 486.

In sum, looking beyond "the facade of the operation," we are convinced that the cumulative significance of the relevant contacts in this case counsels against the applicability of United States law. Hence, we affirm the judgment of dismissal of the district court for failure to state a cause of action under the Jones Act and general maritime law.

*Affirmed.*