**Ageliki Apostolopoulou THEORDROS as personal representative of deceased seaman Antonios Vassiliou and of Antonios Vassiliou, a minor child, Ageliki Apostolopoulou, Plaintiffs,**

**v.**

**FARIDA SHIPPING, INC., A & C Anastassiou Ship Management Ltd., Aegean Maritime Agencies, Inc., et al., Defendants.**

**Civ. No. 90–1385 (JAF).**

United States District Court,
D. Puerto Rico.

April 10, 1991.

Harry Ezratty, San Juan, P.R., for plaintiffs.

Antonio M. Bird, Jr., Bird Bird & Hestres, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This action arises from the death of seaman Antonios Vassiliou, a Greek national. Plaintiffs are members of decedent's family suing in both their personal and representative capacities. Defendants are the owners and operators of the ship, the Zoe Christina. The jurisdiction of this court is invoked pursuant to section 20 of the Jones Act of 1920, as amended, 46 U.S.C. App. § 688 (1990). Defendants Farida Shipping, Inc. ("Farida") and A & C Anastassiou Ship Management, Ltd. ("Anastassiou") have filed a motion to dismiss arguing that defendants' contacts with the United States are insufficient to state a cause of action under the Jones Act or the general maritime law of the United States.[1] Using the First Circuit's analysis in *Kukias v. Chandris Lines, Inc.*, 839 F.2d 860 (1st Cir. 1988), we agree with defendants and therefore dismiss the action.

### I. *Facts and Procedural History*

The incident which gave rise to this action allegedly occurred while decedent was a crew member aboard the ship Zoe Christina. During the relevant period defendant

Farida was the owner of the Zoe Christina, a ship registered in Greece and flying the Greek flag. Defendant Anastassiou operated and managed the Zoe Christina for Farida. Both Farida and Anastassiou are Liberian corporations with their principal places of business outside of Puerto Rico. The known officers of both Farida and Anastassiou are citizens of Greece. The complaint also named as defendants Aegean Maritime Agencies, Inc. ("Aegean"), a corporation organized under the laws of New York; an unnamed medical doctor who treated decedent in Yabucoa, Puerto Rico; and the corporate insurance carriers.

In January, 1986, en route from Corpus Christi, Texas to Yabucoa, Puerto Rico, decedent complained of severe chest pains. Plaintiffs allege that, although decedent reported the pain to the vessel's master and chief mate, he was left unattended until the boat docked in Yabucoa where he was sent to defendant physician for treatment.

After examination, decedent was returned to the ship and judged by the doctor to be "fit for duty." Plaintiffs, however, claim that, for the remainder of the voyage, decedent continued to suffer from chest pains and experienced a myocardial infarction which required hospitalization in Greece on May 20, 1986. Subsequently, on October 30, 1987, he died.

Following seaman's death, the plaintiffs filed an action arising from the same nucleus of facts in a Texas state court. This state court action was dismissed for lack of jurisdiction.

Plaintiffs commenced this action on March 16, 1990. Defendants Farida and Anastassiou subsequently filed a motion to dismiss. Supporting their motion, defendants submitted affidavits from Marianthi Manginas, Vice–President of Farida, and Christos Bouloukos, Vice President of Anastassiou. Docket Document No. 2, *Exhibits 1 and 2*. In these affidavits, Manginas and Bouloukos both stated that Farida and Anastassiou were Liberian corpora-

---

1. Defendants also raised the issue of *forum non conveniens* and the statute of limitations defense as alternative bases for dismissal of plaintiffs' action. Because we dispose of the case on the ground of insufficient contacts, we make no ruling as to these alternate bases for dismissal.

tions; that no United States citizens were directors or officers; that no American citizen held a financial interest in the corporations; and that all of the ship's crew, including decedent, were employed pursuant to the customary articles of agreement as recognized by the Greek Mercantile Marine. Boukoulos further clarified that, during the period of decedent's employment, the Zoe Christina was under a time charter to Flopec, an Ecuadorian government corporation, and it was Flopec who directed the ship's movement. Also, in their *Reply to Plaintiff's Opposition to Defendants' Motion To Dismiss*, defendants submitted a second affidavit from Bouloukos and appended a copy of the employment contract executed between decedent and Anastassiou on November 12, 1985 in Piraeus, Greece. The contract provided that any dispute that arose because of service on the ship would be brought before Greek courts.

## II. *Discussion*

### A. *Jones Act Claim*

■ Because we are considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), we are bound to read the allegations in the light most favorable to the plaintiffs, *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), exempting "those 'facts' which have since been conclusively contradicted by plaintiffs' concessions or otherwise." *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987). In *Lauritzen v. Larsen*, 345 U.S. 571, 583–591, 73 S.Ct. 921, 928–932, 97 L.Ed. 1254 (1953), the United States Supreme Court set forth a series of factors which should guide courts in their choice of law analysis as to both the Jones Act and general maritime law. These factors are: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured seaman; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. In addition, in a subsequent decision, the Supreme Court identified the shipowner's base of operations as an eighth factor which courts

should include in its calculus and cautioned that the *Lauritzen* factors were "not intended as exhaustive." *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970); *Kukias*, 839 F.2d at 862. Here, applying the *Lauritzen–Rhoditis* test, we find that defendants Farida and Anastassiou have insufficient United States to state a cause of action under the Jones Act. As to the first factor, plaintiffs allege that decedent began experiencing severe chest pains in January, 1986 during the voyage from Texas to Puerto Rico. Decedent was then treated by a medical doctor in Puerto Rico. Following this treatment, he continued to experience distress during the rest of the Zoe Christina's voyage up until he was repatriated to Greece from Africa in May, 1986 at which time he was hospitalized. Aside from any potential malpractice committed by the doctor, any potential tortious activity committed by defendants Farida and Anastassiou would have occurred while the ship was not in United States territory. Even if we were to assume that the tort did, in fact, occur in United States waters, the Supreme Court has warned that the location of the wrongful acts is of limited application to shipboard torts, *Lauritzen*, 345 U.S. at 583, 73 S.Ct. at 928, and that "[t]he amount and type of recovery which a foreign seaman may receive from his foreign employer while sailing on a foreign ship should not depend on the wholly fortuitous circumstance of the place of injury." *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 384, 79 S.Ct. 468, 486, 3 L.Ed.2d 368 (1959). Therefore, even inferring that the tort was committed within United States territory, the first factor here should be given limited weight.

All of the other *Lauritzen–Rhoditis* factors weigh in favor of dismissal. At the time of the alleged tortious activity, the Zoe Christina was registered in Greece and flying the Greek flag. The decedent was a national of and domiciled in Greece. The contract of employment was executed in Greece. It is also clear from the employment contract that both parties agreed to settle disputes arising from the agreement in the courts of Greece, thereby evidencing

the availability of the foreign forum. And, as to the seventh factor, the law of the forum, here, like in *Kukias*, we have defendants who have involuntarily been made parties to the action. As such, this factor should count for little. *Kukias*, 839 F.2d at 863. All of these factors weigh in favor of the application of Greek law.

As to the fourth factor, the allegiance of the shipowner, whether we find Farida's and Anastassiou's allegiance was to Liberia, the place of incorporation, or we "look through the facade of foreign registration and incorporation to find the true ownership of the vessel," *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1481 (9th Cir. 1986); *Kukias*, 839 F.2d at 862, and find that the shipowner's and operator's allegiance is to Greece, no facts are before the court that would allow us to infer that either corporation was created as a foreign shell by American interests to avoid being subject to American law. *Kukias*, 839 F.2d at 862. Therefore, this factor also weighs in favor of dismissal.

Finally, we must consider whether the defendants' base of operations should tip the scales in favor of the application of American law. In *Rhoditis*, 398 U.S. at 309–310, 90 S.Ct. at 1734–1735, the court examined the contacts that the shipowner had with the United States and found that they were substantial. The owner, himself, had been a permanent resident of the United States since 1952. A significant amount of the shipping originated and terminated in the United States. The Supreme Court therefore affirmed the Court of Appeals in holding that the shipowner was an "employer" for purposes of the Jones Act. Subsequent cases have also found that, where defendant shipowner's and operator's base of operations resulted in substantial contacts with the United States, they can be held liable under the Jones Act. *Karvelis v. Constellation Lines S.A.*, 806 F.2d 49, 51 (2d Cir.1986) (Affirming the district court's decision that, where the foreign shipowners contracted with an American agent to manage the ship, to solicit cargo, and to receive and deposit payments in American banks, as well as evidence of some direct management involvement by

foreign principals from United States shores, there were substantial United States contacts warranting application of the Jones Act.), *cert. denied* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Antypas v. Cia. Maritima San Basilio, S.A.*, 541 F.2d 307, 308 (2d Cir.1976) (Substantial contact found where ship's agent is New York Corporation.), *cert. denied, Compania Maritima San Basilio, S.A. v. Antypas*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977); *Mattes v. National Hellenic Am. Line, S.A.*, 427 F.Supp. 619 (S.D.N.Y.1977).

In *Kukias*, the First Circuit enunciated standards for the determination of whether defendants' contacts were "substantial" so as to warrant application of the Jones Act. The factual scenario in *Kukias* is quite similar to that of the present case. There, a Greek seaman, while sailing aboard a passenger vessel of Panamanian corporate ownership and registry, operated and managed by a Liberian corporation whose general passenger agent was a Delaware corporation, was injured when he fell down a stairway during a voyage from San Juan, Puerto Rico to St. Thomas, Virgin Islands. The seaman received medical treatment on the ship, in a hospital in St. Thomas and in Greece. In resolving the issue of the sufficiency of defendants' contacts with the United States, the court turned to an Eleventh Circuit case, *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512 (11th Cir.1985). The First Circuit adopted the reasoning of the court in *Sigalas* which found that the fact that the bulk of a ship's revenue came from American sources, without more, was not sufficient to justify the application of American law. *Sigalas*, 776 F.2d at 1518–1519; *Kukias*, 839 F.2d at 864. The court, in *Kukias*, found that there were not substantial contacts to establish an American base of operations even where

> for a major portion of the year, the Victoria (the ship) embarks on weekly cruises from Puerto Rico; that substantial revenue from American sources is generated from the operation of the Victoria and is collected by a domestic corporation, Chandris, Inc.; that the vessel is supplied

with food and provisions in an American port; and that large sums are spent in advertising the Victoria in the United States.

*Kukias*, 839 F.2d at 864. The court in *Kukias* further ruled that even though "the base of operations is a significant factor," courts must continue to examine "the full range of factors relevant to choice-of-law determinations" and may decline to apply the Jones Act even where a shipowner had substantial domestic contacts. *Kukias*, 839 F.2d at 864.

Here, in the complaint, plaintiffs allege that Farida and Anastassiou are foreign corporations doing business in Puerto Rico. They make no further allegations as to defendants' contacts with the United States. While plaintiffs include Aegean, a New York corporation, as a defendant in the complaint, they allege no facts which would reveal Aegean's participation in the tortious activity other than the conclusory allegations that Aegean, individually or jointly, owned, operated, managed or controlled the Zoe Christina and was decedent's employer.

The affidavits of the corporate officers of Farida and Anastassiou attest to the fact that neither corporation has ever maintained a corporate office in the United States nor have the named officers ever resided in the United States. They further attest to the fact that no American citizen or resident owned a financial interest in either corporation nor were there any American crew members. They also state that Farida and Anastassiou did not maintain offices, had no telephone listings, neither owned nor rented property, did not maintain bank accounts and did not solicit or advertise for freight in the United States. And during most of decedent's time aboard the ship it was an Ecuadorian corporation that acted as the time charterer arranging the ship's itinerary. All of these facts lead us to conclude that defendants did not maintain a base of operations in the United States that would warrant the application of American law.

■ Plaintiffs argue that since the the Jones Act claim is linked to a medical malpractice claim against an unnamed Puerto Rico physician, the court should exert jurisdiction over all of plaintiffs' claims "in order to do justice." We disagree. In *Mattes*, 427 F.Supp. at 622, the court pointed out that "[t]he fact that plaintiff received initial medical treatment in the United States is simply not sufficiently 'substantial' to justify application of American law." *See Kukias*, 839 F.2d at 863. Here, while plaintiffs may invoke the diversity jurisdiction of this court to file a malpractice action against the local physician, the court in *Kukias* thought it "unwise to allow the choice of law to be influenced by a factor, the place of hospitalization, which is only slightly less fortuitous than that of the place of the wrongful act." *Kukias*, 839 F.2d at 863. We follow the First Circuit's counsel and decline to allow the fact that decedent received treatment here, absent further support for the application of American law, to be controlling and dismiss plaintiffs' Jones Act claim as against Farida and Anastassiou.

### B. *Remaining Defendants*

■ In plaintiffs' complaint, an unnamed physician from Yabucoa allegedly treated decedent during the voyage. Plaintiffs alleged as their fifth cause of action that this physician committed malpractice in the treatment of the decedent. However, the identity of this defendant remains unnamed. Also, as to Aegean, the only references to them are in the complaint where they are identified as a New York corporation who was allegedly the employer of decedent and an owner and/or operator of the Zoe Christina.

In the file, there is no proof of service as to these defendants as required by Rule 4 of the Federal Rules of Civil Procedure. As to the defendant physician, plaintiffs admitted that, as of May 24, 1990, his identity remained unknown to plaintiffs. As to Aegean, we have no proof of service as required by Rule 4.

Therefore, based on the evidence before us that the remaining defendants have never been served with process, pursuant to Fed.R.Civ.P. 4(j), we dismiss the action

without prejudice as to the remaining defendants.

### III. *Conclusion*

In sum:

We dismiss the action as to defendants Farida and Anastassiou finding insufficient contacts with the United States to state a cause of action under the Jones Act.

We dismiss the action as to the remaining defendants pursuant to Fed.R.Civ.P. 4(j).

IT IS SO ORDERED.