Middleton v. Sutton                    CV-92-589-B    01/05/95

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

William Thomas Middleton

        v.                                  Civil No. 92-589-B

Elizabeth Sutton, et al.


**O R D E R**


The parties filed motions on choice of law responding to
Magistrate Judge Barry's order.  The magistrate judge determined
that New Hampshire law governs the substantive legal standard for
defamation and the availability of punitive damages in this case.
The defendants appeal the magistrate judge's choice-of-law ruling
as to proof of defamation.


**I.  STANDARD OF REVIEW**

The magistrate judge's choice-of-law determination is not
dispositive of the plaintiff's cause of action.  On appeal,
therefore, I may modify or set aside the order only if it is
clearly erroneous or contrary to law.  28 U.S.C.A. §
636(b)(1)(A); Fed. R. Civ. P. 72(a); <u>Fischer v. McGowan</u>, 585 F.
Supp. 978, 984 (D.R.I. 1984).  However, because a choice of law
is a legal ruling, I review the magistrate judge's choice <u>de</u>


1

novo.  See <u>Kukias v. Chandris Lines, Inc.</u>, 839 F.2d 860, 861 (1st Cir. 1988).

## II.  **FACTS**

The plaintiff, William Thomas Middleton, is a private citizen who alleges that he was defamed by statements made by a guest on the <u>Geraldo</u> television program who said that Middleton had sexually molested his children and had run a child pornography and molestation ring.  At the time of the television show and during this action, Middleton has been incarcerated in a Georgia prison.  The defendants, The Investigative News Group, Inc. and Tribune Entertainment (the broadcasters), are New York corporations who researched, produced, taped and distributed the <u>Geraldo</u> show.

## III.  **ANALYSIS**

In a diversity case, I must use the forum state's choice-of-law principles to resolve a conflict between the applicable law of interested states.  See <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>American Title Ins. Co. v. East West Financial Corp.</u>, 959 F.2d 345, 348 (1st Cir. 1992).  New Hampshire, New York, and Georgia are all interested states. Because a conflict exists between New York law and the law of New

Hampshire and Georgia[1], I apply New Hampshire's choice-of-law principles to determine which state's law should govern.

New Hampshire uses Dean Robert LeFlar's five choice-influencing considerations to resolve substantive choice-of-law questions in tort actions:

> (1) predictability of results; (2) maintenance of reasonable orderliness and good relationship among the States in our federal system; (3) simplification of the judicial task; (4) advancement by the court of its own State's governmental interests rather than those of other States and (5) the court's preference for what it regards as the sounder rule of law.

Ferren v. General Motors Corp. Delco Battery Div., 137 N.H. 423, 425 (1993); Clark v. Clark, 107 N.H. 351, 353-55 (1966). The New Hampshire Supreme Court has not yet applied these considerations in resolving a substantive choice of law problem in a multi-state

---

[1] New Hampshire and Georgia apply an ordinary negligence standard in defamation cases brought by private persons. McCusker v. Valley News, 121 N.H. 258, 260, cert. denied, 454 U.S. 1017 (1981) (private individual "may recover compensatory damages upon a showing that the defendant was negligent in publishing a defamatory falsehood"); Triangle Publications, Inc. v. Chumley, 317 S.E.2d 534, 536 (Ga. 1984) ("We agree with the majority view that a negligence standard for private figure plaintiffs best preserves the balance between free speech interests and protection of the individual's reputation."). New York, however, requires plaintiffs to show that the defendant acted in a grossly irresponsible manner if the defamatory material is "within the sphere of legitimate public concern." Chapadeau v. Utica Observer-Dispatch, Inc., 341 N.E.2d 569, 571 (N.Y. 1975).

defamation case. Although the court did apply its choice-influencing considerations in <u>Keeton v. Hustler Magazine</u>, 131 N.H. 6, 17-21 (1988), as an alternative basis for its determination that New Hampshire's statute of limitations should be applied in multi-state defamation cases brought in New Hampshire, the court's analysis is of limited applicability here since it involved a law that the court characterized as procedural rather than substantive[2] and since the choice-influencing considerations are applied differently in choosing a statute of limitations than in the present case where the choice of law question concerns the elements of plaintiff's claim. Thus, I undertake my own analysis of the applicability of each consideration in turn.

A. <u>Predictability of Results</u>

The first consideration, predictability, is most relevant "to consensual transactions, in which it is important that parties be able to know in advance what law will govern a transaction so that they can plan it accordingly." <u>Clark</u>, 107 N.H. at 354. At the other end of the spectrum, predictability of

_____

[2] New Hampshire generally applies its own law to issues it determines are procedural, <u>Keeton</u>, 131 N.H. at 13.

4

results carries little weight in cases involving fortuitous events such as car accidents.  Id.  In between the poles of predictability, lie circumstances suggesting some degree of planning or expectation of particular legal consequences as in the case of injury related to the location of employment.  See, e.g., LaBounty v. American Ins. Co., 122 N.H. 738, 742 (1982); Maguire v. Exeter & Hampton Electric Co., 114 N.H. 589, 591 (1974).

The Geraldo television show is taped in New York, but it has a national audience, and it regularly targets individuals such as Middleton who live in other states.  Nevertheless, defendants argue that they were justified in relying on New York's "hospitable climate for the free exchange of ideas" in choosing New York as the show's location.  Thus, they contend that their interest in a predictable result supports the application of New York law.

To the extent that defendants premised their behavior on the belief that New York law would govern their conduct regardless of their target's domicile, that belief was plainly unreasonable.  By broadcasting their program nationally, defendants subjected themselves to suit in any jurisdiction in the United States.  See Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 (1984).

5

Moreover, as one commentator has observed

>[a]lthough modern choice of law decisions in defamation action cases are scant, the varying choice of law approaches applied by states today indicate that the law applied is likely to depend on the forum chosen. Indeed, because of the preference for forum law incorporated into several of the modern approaches, plaintiffs may often be able to choose a state's law simply by selecting the state as the forum.

James R. Pielemeier, Constitutional Limitations on Choice of Law: The Special Case of Multistate Defamation, 133 U. Pa. L. Rev. 381, 391 (1985) (footnote omitted); see also Fleury v. Harper & Row Publishers, Inc., 698 F.2d 1022, 1025 (9th Cir. 1983) ("[l]ibel and invasion of privacy are transitory torts to which the law of the forum will normally be applied absent a strong governmental interest of another jurisdiction")(overruled in part on other grounds by In re Complaint of McLinn, 739 F.2d 1395 (9th Cir. 1984), cert. denied, 104 S. Ct. 149 (1983). Even in states that do not expressly favor the application of forum law, it is by no means certain that the forum state's choice of law rules will favor the application of law of a defendant's residence or the site of a broadcast in a multistate defamation case. See, e.g., Restatement (Second) of Conflict of Laws §§ 150(2) and 150(3) (stating that in a multistate defamation case, the state

of plaintiff's domicile or incorporation should apply in most cases since that state has the most significant relationship to the claim); see also, Dowd v. Calabrese, 589 F. Supp. 1206, 1210 (D.D.C. 1984); Machleder v. Diaz, 538 F. Supp. 1364, 1369-70 (S.D.N.Y. 1982). Since defendants did not have a reasonable expectation that New York law would govern any defamation claim that might be brought against them, I am disinclined to give significant weight to their predictability argument.

B. Maintenance of Reasonable Orderliness and Good Relationships Among the States in the Federal System

In general, the orderliness factor is satisfied as long as the court chooses the law of a state with a substantial connection to the circumstances and issues involved in the legal action. Keeton, 131 N.H. at 18. In addition to physical contacts between states and the parties, I consider the states' connections to all of the facts and the issues raised. See LaBounty, 122 N.H. at 742-43.

New York is the home of the broadcasters and the origination point of the offending broadcast. In addition, the New York Court of Appeals has expressed its policy to protect media defendants from defamation suits. See Immuno AG v. Moor-Jankowski, 567 N.E.2d 1270, 1277 (N.Y.), cert. denied, 500 U.S.

7

954 (1991). Georgia has significant contacts with Middleton as his place of domicile, and the place where he was most seriously defamed, as he alleges, by the statements made in the _Geraldo_ program. Although Georgia decisional law has not stated a policy, it is accepted that states have a strong and legitimate interest "in compensating private individuals for wrongful injury to reputation." _Gertz v. Robert Welch, Inc._, 418 U.S. 323, 348 (1974). New Hampshire is the forum state, but has no close connection with the parties, although the offending program was broadcast in New Hampshire and allegedly defamed Middleton here. New Hampshire has expressed a substantial interest in "striking an appropriate balance between promoting protection for defendants and legitimate recovery for plaintiffs" in a defamation action, even when the parties are not New Hampshire residents. _Keeton_ 131 N.H. at 16. New Hampshire also shares an interest with New York and Georgia that the citizens of each state receive a free flow of accurate information. _See Keeton_ 465 U.S. at 776 ("False statements of fact harm both the subject of the falsehood _and_ the readers of the statement.").

I conclude that all three states have significant contacts and interest in Middleton's defamation claim. Under the circumstances, however, Georgia's interest in compensating a

8

plaintiff who resides and was injured in Georgia outweighs New York's interest in protecting defendants operating a national television broadcast out of New York.  See In re Yagman, 796 F.2d 1165, 1171 (9th Cir. 1986) (choosing California over New York defamation law because California had the greatest interest in the issue as the state where the plaintiffs lived and worked).

C.  Simplification of the Judicial Task

This factor has little significance as this court could apply the law of New Hampshire, Georgia or New York with equal ease.

D.  Advancement of the Forum's Governmental Interest

As noted above, New Hampshire has a general interest in using its laws to "discourage the deception of its citizens." Keeton, 465 U.S. at 776.  It also has an interest in striking an appropriate balance between protecting the speech rights of defendants and plaintiffs' right to recover for injuries resulting from defamation.  Gertz, 418 U.S. at 347-48. Nevertheless, there is little evidence in the present case to suggest that these interests are particularly important here since there has been no claim that New Hampshire's citizenry had any special interest in the particular Geraldo program that is the subject of this suit and neither the plaintiff nor the

9

defendants are from New Hampshire.  Thus, I assign little weight to this consideration in my analysis.

E.  Better Rule of Law

In this case, the sounder rule of law consideration favors the application of New Hampshire law.  The United States Supreme Court has acknowledged that states "retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual." Gertz, 418 U.S. at 345-46.  In balancing the important governmental interests of preserving uninhibited public speech and protecting the victims of defamation, the New Hampshire Supreme Court has struck the balance by allowing defamation-private-citizen-plaintiffs to recover for the negligent publication of defamatory statements.  McCusker, 121 N.H. at 260. Moreover, in doing so, New Hampshire has followed the standard adopted in most other jurisdictions.  See, e.g., McCall v. Courier-Journal & Laskille Tires Co., 456 U.S. 975 (1982); Triangle Pub., Inc., 315 S.E. 2d at 536-37;  Rosner v. Field Enterprises, Inc., 564 N.E. 2d 131, 141 (Ill. App. 1st 1990); Jaron Sales Corp. v. Sindorf, 276 Md. 580, 596, 350 A.2d 688, 697 (1976).  Under these circumstances, I am in no position to second

guess the New Hampshire Supreme Court's determination that this is the better rule.

## IV. <u>CONCLUSION</u>

In summary, the application of the five choice-influencing considerations favors the use of New Hampshire law to determine the liability standard in this case since: (1) this is what the New Hampshire Supreme Court would determine is the sounder rule of law; (2) none of the other factors favors the application of New York law; and (3) to the extent that Georgia's interest in protecting its residents from defamatory statements is the most compelling of the three states with an interest in the matter, that interest would be fully served by applying New Hampshire's identical liability standard.

Defendants' motion to appeal the magistrate judge's order (document no. 33) is denied and the magistrate judge's order is affirmed.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

January 5, 1995
cc:  William Chapman, Esq.
     Marcia Stein, Esq.
     John Vanacore, Esq.

11