1998 ME 249

Antonio CACHO

v.

**PRINCE OF FUNDY CRUISES, LTD.**

Supreme Judicial Court of Maine.

Argued Oct. 8, 1998.
Decided Nov. 24, 1998.

John P. James (orally), Friedman & James LLP, New York, N.Y., Michael X. Savasuk, Bradley & Savasuk, Portland, for plaintiff.

Leonard W. Langer (orally), Tompkins, Clough, Hirshon & Langer, P.A., Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Antonio Cacho appeals from a judgment entered in the Superior Court (Cumberland County, *Cole, J.*) granting Prince of Fundy Cruises, Ltd.'s motion for summary judgment. Cacho argues that the court incorrectly held that neither United States general maritime law nor the Jones Act, 46 U.S.C. § 688 (Supp.1998), apply to his claims to recover damages for personal injuries. We agree and vacate the judgment.

[¶ 2] Cacho, a Honduran citizen, worked as a deck hand and crew member on the M/S Scotia Prince. The Scotia Prince is registered in Panama and flies the Panamanian flag. Prince of Fundy Cruises, Ltd. (POFC) operates the Scotia Prince pursuant to a

bareboat charter[1] with the registered owner, Transworld Steamship Company, a Panamanian company.[2] POFC is a Bermuda corporation with its principle place of business in Bermuda. POFC's owner resides in Bermuda, and POFC's President, Henk A. Pols, a United States citizen, resides in Maine.

[¶ 3] POFC operates the Scotia Prince from May to October carrying automobiles and passengers between Portland and Yarmouth, Nova Scotia. During the other six months the Scotia Prince is berthed in Nova Scotia, where crew members perform maintenance work. POFC does not operate any other vessel.

[¶ 4] POFC conducts its day to day operations in Portland, where it has a marketing department, reservations department, accounting department, and operations center. The Portland office employs about twelve permanent employees and an additional thirty to forty workers from May to October. POFC maintains bank accounts in Portland from which it makes payments for payroll, regular bills from suppliers, and certain insurance obligations.

[¶ 5] POFC also maintains an office in Yarmouth, staffed by Canadian citizens, who regularly take reservations and provide ticketing services. POFC works closely with the Canadian government and the provincial government of Nova Scotia to promote tourism. POFC also maintains bank accounts in Yarmouth.

[¶ 6] Cacho signed his employment contract in Portland. The employment contract provides that "[t]he material decision of the arbitration court exclusively has to be found in accordance with the law of [Panama]."

[¶ 7] Cacho suffered injuries working on the Scotia Prince while it was docked at the International Marine Terminal in Portland. He brought an action against POFC for violation of the Jones Act, 46 U.S.C. § 688,[3] general United States maritime law, and for failure to provide maintenance and cure. The court granted a summary judgment to POFC because it found United States law inapplicable to Cacho's claims.

## THE JONES ACT AND UNITED STATES MARITIME LAW

[¶ 8] The trial court may enter a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by [M.R. Civ. P.] 7(d) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c). Whether the facts as found by the trial court require the application of United States law to Cacho's claim is a question of law that we review de novo, but we review the court's factual findings only for clear error. See Paffhausen v. Balano, 1998 ME 47, ¶ 5, 708 A.2d 269, 270–71.

[¶ 9] To determine whether United States law should apply, we must consider at least the following factors:

(1) the place of the wrongful act;

(2) the law of the flag;

(3) the allegiance or domicile of the injured seaman;

(4) the allegiance of the defendant shipowner/charterer;

(5) the place where the contract of employment was made;

(6) the inaccessibility of a foreign forum;

(7) the law of the forum; and

---

1. A bareboat charter is "[a] document under which one who charters or leases a boat becomes for the period of the charter the owner for all practical purposes." Black's Law Dictionary 149 (6th ed.1990).

2. Transworld is not a defendant in this case.

3. The Jones Act, 46 U.S.C. § 688, provides in pertinent part:

    Any seaman who shall suffer personal injury in the course of his employment may, at his elec-

tion, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C.A. § 688(a) (Supp.1998).

(8) the shipowner's/charterer's base of operations.

*Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308–09, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) (adding eighth factor and noting list is "not intended as exhaustive"); *see also Lauritzen v. Larsen*, 345 U.S. 571, 583–91, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). "The importance of each choice-of-law factor may vary from case to case depending on the totality of the circumstances." *Walters v. Prince of Fundy Cruises, Ltd.*, 781 F.Supp. 811, 814 (D.Me.1991). The Court must weigh these factors and "apply[ ] the law of th state with the most substantial contacts giving rise to the claim . . . ." *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 90–91 (2d Cir.1996). These factors apply to both the Jones Act and United States maritime law generally. *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

[¶ 10] We consider each of these factors in turn.

### 1. *The Place of the Wrongful Act.*

[¶ 11] The trial court found that Cacho was injured while the Scotia Prince was docked in Portland, but it considered the place of injury "fortuitous" and worthy of little weight. We place greater significance on this factor than did the trial court.

[¶ 12] The significance of the place of the wrongful act depends on the circumstances. *See Neely v. Club Med Management Servs., Inc.*, 63 F.3d 166, 190 (3rd Cir. 1995). When a vessel conducts traditional shipping activities that require sailing the world's seas and stopping at many different ports, courts consider the place of the wrongful act fortuitous and of minimal importance. *See Romero*, 358 U.S. at 384, 79 S.Ct. 468; *Kukias v. Chandris Lines, Inc.*, 839 F.2d 860, 862 (1st Cir.1988) (noting this factor is of "little significance" with respect to injury sustained aboard cruise ship). On the other hand, "[w]here seamen are not plying the world's seas in traditional international shipping activity, some contacts take on heightened significance . . . ." *Neely*, 63 F.3d at 190 (finding place of wrongful act more significant where vessel travelled only in St. Lucia

waters for scuba diving expeditions); *see also Marriott v. Sedco Forex Int'l Resources, Ltd.*, 827 F.Supp. 59, 64 (D.Mass.1993) ("[T]he significance of each factor in a nontraditional maritime context like offshore oil drilling varies from that in the traditional shipping context . . . ."). The Scotia Prince's limited travel compels this Court to place greater significance on the place of injury.

[¶ 13] Unlike ships that sail the world's seas, the Scotia Prince sails between two ports, Portland and Yarmouth. Consequently, the fact that Cacho was injured in Portland was not fortuitous and should not be dismissed as of "little significance." *Cf. Garcia v. M/V Kubbar*, 4 F.Supp.2d 99, 105 (N.D.N.Y.1998) (place of wrongful act given significant weight when seaman hired to perform work in Guatemala and wrongful act was in Guatemala). *But see Walters*, 781 F.Supp. at 814 (site of wrongful act of "little significance" where deck hand on Scotia Prince injured in Nova Scotia). The place of the wrongful act weighs in favor of applying United States law to this case.

### 2. *The Law of the Flag*

[¶ 14] The law of the flag is of " 'cardinal importance' in determining the choice of law in maritime cases." *Kukias*, 839 F.2d at 862 (quoting *Lauritzen*, 345 U.S. at 584, 73 S.Ct. 921). The Scotia Prince flies the flag of Panama. The law of the flag weighs in favor of the application of Panamanian law.

### 3. *The Allegiance or Domicile of the Injured*

[¶ 15] The fact that Cacho is a Honduran citizen is "significant" in a choice of law analysis. *See Kukias*, 839 F.2d at 862. This factor weighs in favor of the application of the law of Honduras.

### 4. *The Allegiance of the Defendant Shipowner/Charterer*

[¶ 16] POFC, as the bareboat charterer of the Scotia Prince, is considered the owner *pro hac vice*. *Reed v. Steamship Yaka*, 373 U.S. 410, 412, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). POFC is a Bermuda corporation, a fact that is "significant" in a

choice of law analysis. *Walters*, 781 F.Supp. at 814–15.

[¶ 17] Courts will examine the corporate makeup of the defendant shipowner and charterer and " 'look through the facade of foreign registration and incorporation to find the true ownership of the vessel' and its operator." *Kukias*, 839 F.2d at 862 (quoting *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1481 (9th Cir.1986)). Such scrutiny is necessary because "a practice has grown, particularly among American shipowners, to avoid stringent shipping laws by seeking foreign registration eagerly offered by some countries." *Lauritzen*, 345 U.S. at 587, 73 S.Ct. 921.

[¶ 18] Although POFC maintains a base of operations in Portland, this does not establish that true ownership lies with American interests and that POFC is a "foreign shell created . . . to avoid the requirements of American law." *Kukias*, 839 F.2d at 862. Consequently, this factor weighs in favor of applying the law of Bermuda.

### 5. The Place Where the Parties Signed the Contract of Employment

[¶ 19] The trial court found that Cacho signed the contract aboard the Scotia Prince in Portland, but held that the place of contracting is fortuitous and therefore generally accorded "little weight." *See Kukias*, 839 F.2d at 862.

[¶ 20] We do not accord this factor "little weight" because the Scotia Prince's travels are limited to only two ports. In the traditional seafaring context, the place of contract, like the place of injury, is often considered fortuitous because of the variety of ports and seas the vessel may travel. *See Neely*, 63 F.3d at 190. Here, however, the limited nature of the Scotia Prince's travel renders the place of contract less fortuitous and more worthy of weight by this Court. *See id.* Unlike a traditional international shipping operation, POFC is unlikely to take on crew members at random ports. *See id.* at 192. Consequently, we find that this factor weighs in favor of applying United States law.

[¶ 21] The trial court found that the choice of law provision in Cacho's contract with POFC required the application of Panamanian law to disputes arising from the employment relationship. "[C]hoice of law expressed in the contract may be much more important" than the place of contract. *Kukias*, 839 F.2d at 862 (quoting *Villar*, 782 F.2d at 1481); *see also Walters*, 781 F.Supp. at 815 (construing choice of law provision in POFC employment contract to weigh against application of United States law). *But see Fisher v. Agios Nicolaos V*, 628 F.2d 308, 316 n. 13 (5th Cir.1980) ("Probably due to the disparity in bargaining power between the seaman and his employer, American courts have generally accorded little determinative weight to such contractual choice of law provisions."). Although we find that the choice of law provision weighs in favor of applying Panamanian law, we do not discount the fact that the parties signed the contract in Portland.

### 6. The Inaccessibility of a Foreign Forum

[¶ 22] Neither party submitted evidence with respect to the accessibility of a foreign forum, therefore, we do not analyze this factor.

### 7. The Law of the Forum

[¶ 23] This factor is accorded little weight when the defendant is "involuntarily made a party." *Kukias*, 839 F.2d at 863 (citing *Sosa v. M/V Lago Izabal*, 736 F.2d 1028, 1031 (5th Cir.1984)). Cacho acknowledges that the law of the forum is often accorded little weight, but he urges the Court to consider that POFC requires all passengers injured upon the Scotia Prince to seek redress in a court in the State of Maine. Although this undermines POFC's argument that it is not submitting to this forum, we do not accord significant weight to this factor favoring the application of United States law. *See Kukias*, 839 F.2d at 863; *Walters*, 781 F.Supp. at 815.

### 8. The Base of Operations

[¶ 24] To effectuate the liberal purposes of the Jones Act, "the facade of the

operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that [the] ship and [the] owner have with the United States." *Rhoditis*, 398 U.S. at 310, 90 S.Ct. 1731. The base of operations is a "significant factor" in a maritime choice of law analysis. *Kukias*, 839 F.2d at 864.

[¶ 25] The evidence supports the trial court's finding that POFC's base of operations is in Portland. POFC's President admitted that the direct and actual operation of POFC is conducted in Portland. The marketing director, POFC's treasurer, the director of operations and maintenance, and the reservations department are all based in Portland. Most of POFC's full-time employees work in Portland. More than half of the Scotia Prince's supplies are purchased in Maine, and POFC pays all crew members from a Portland bank account. The fact that Portland serves as POFC's base of operations is a significant factor that weighs in favor of applying United States law.

[¶ 26] The preceding factors, considered in their totality and accorded the appropriate weight, favor the application of United States law. Accordingly, we hold that the Superior Court erred when it dismissed Cacho's claims pursuant to the Jones Act and United States maritime law.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.